# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | | |
|---|---|---|
| HANWHA AZDEL, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 6:12-cv-00023 |
| | ) | |
| v. | ) | |
| | ) | |
| C&D ZODIAC, INC., | ) | By: Hon. Robert S. Ballou |
| | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT & RECOMMENDATION

In this breach of contract litigation, Defendant C&D Zodiac, Inc. ("C&D") asks the court to tax costs following the District Court's dismissal of all claims on summary judgment. Plaintiff, Hanwha Azdel, Inc. ("Azdel"), opposes the motion for the amount sought in taxed costs and further requests that the court stay any ruling on the cost issue pending the outcome of its appeal of the summary judgment decision to the Fourth Circuit. These matters were referred to me to prepare a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), and having considered the record, the legal arguments submitted, and the applicable law, I **RECOMMEND** that Azdel's Motion to Stay Costs (Dkt. No. 271) be **GRANTED** in part and **DENIED** in part, C&D's Bill of Costs be **GRANTED** in the amount of $36,013.30, and payment of the costs be **STAYED** pending final resolution of all appeals upon the posting of an appropriate supersedeas bond.

## I. BACKGROUND

The facts of this case are fully set forth in the District Court's June 2, 2014 Memorandum Opinion and Order (Dkt. Nos. 246 & 247) granting Defendants' motion for summary judgment.

In brief, Azdel developed a thermoplastic sheet product, "Aero-lite", for use in the interior liner of airplane cabins. Azdel worked with C&D on the development of the product and executed a Memorandum of Understanding ("MOU") underlying the conditions of their collaboration in March 2008. In May 2012, Azdel sued C&D in a breach of contract action, asserting that C&D did not pay for the Aero-lite sheets pursuant to their MOU. Azdel later added counts alleging that C&D breached confidentiality provisions of the MOU. C&D defended their nonpayment by saying that the Aero-lite sheets were nonconforming, defective, unusable, or were rejected by their customer. The District Court granted C&D's motion for summary judgment and dismissed Azdel's remaining motions as moot on June 2, 2014.

Azdel filed a Notice of Appeal with the U.S. Court of Appeals for the Fourth Circuit on July 1, 2014. Dkt. No. 254. C&D subsequently filed a Bill of Costs with the court on July 28, 2014, requesting that the Clerk tax costs in the amount of $39,851.42 under 28 U.S.C. § 1920. Dkt. No. 260. Azdel opposed the Bill of Costs as excessive on August 9, 2014, seeking to stay the taxing of costs pending appeal or stay enforcement of the costs after disallowing some of C&D's submitted costs. Dkt. No. 271. C&D responded to Azdel's objections on August 14, 2014 (Dkt. No. 273) and Azdel replied on August 23, 2014. Dkt. No. 274. The matter is now ripe for review.

## II. REQUEST TO STAY

Azdel requests that the court stay deciding the issue of the amount of costs to tax until the resolution of the pending appeal with the Fourth Circuit. The decision lies in the sound discretion of the district court. Singleton v. Dep't of Corr. Educ., No. 1:03-cv-00004, 2003 WL 22299039, at *1-2 (W.D. Va. Oct. 3, 2003). A district court may properly defer ruling on assessment of costs until the appellate process has been completed. Reed v. Health & Human

Services, 774 F.2d 1270, 1277 (4th Cir. 1985) (reversed on other grounds).  However, because Rule 54(d) creates a presumption in favor of the taxation of costs, a district court must provide a valid reason not to award costs at the customary stage.  Singleton, 2003 WL 22299039, at *1 -2; EEOC v. Allied Systems, Inc., No. 97-cv-1396, 1999 WL 395377, at *1 (N.D.N.Y. June 9, 1999).

In this case, I find that it is in the interest of judicial economy to resolve the motions regarding taxation of costs immediately, so that any appeal as to the award of costs may be consolidated with the appeal on the merits.  See Amdocs (Israel) Limited, v. Openet Telecom, Inc., No. 1:10-cv-910, 2013 WL 1192947, at *2 (E.D. Va. Mar. 21, 2013); Singleton, 2003 WL 22299039, at *1 ("[M]y discretion is best exercised by proceeding with a review of the taxation of costs because it would avoid piecemeal appeals. With prompt taxation, any appeal from the award of costs could feasibly be consolidated with the pending appeal on the merits, thereby enhancing judicial efficiency.").  Resolution of taxation of costs at this stage will not present a hardship on the parties, as both parties have already spent significant resources and filed multiple briefs defending their position on the issue.

Although Azdel's costs will be taxed, payment of the costs may be stayed until the resolution of the Fourth Circuit appeal upon Azdel's posting of a supersedeas bond.  Under Federal Rule of Civil Procedure 62(d), the appellant moving for a stay generally must post a bond securing the amount of the judgment and costs.  Fed. R. Civ. P. 62(d); see Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc., 87 S. Ct. 1, 3 (1966) ("With respect to a case arising in the federal system it seems to be accepted that a party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond in accordance with Fed. R. Civ. P. 62(d) and 73(d).");  Fid. & Deposit Co. of Maryland v. Davis,

3

127 F.2d 780, 782 (4th Cir. 1942).  The district court can require the appellant to post a bond in order to attain the stay of judgment and costs pending appeal.  MercExchange, L.L.C. v. eBay, Inc., 660 F. Supp. 2d 653, 656 (E.D. Va. 2007) ("The district court is entitled to exercise its inherent authority to impose a bond requirement on a party before it.").  The amount of the bond normally is set for the full judgment and any other costs that may arise from delay in payment.  Holland v. Law, 35 F. Supp. 2d 505, 505-06 (S.D.W. Va. 1999) (explaining the purpose of the bond is to protect the status quo); Alexander v. Chesapeake, Potomac & Tidewater Books, Inc., 190 F.R.D. 190, 193 (E.D. Va. 1999).  The court does have the discretion to permit a stay without a bond or with an alternative form of security.  D.B. v. Bedford Cnty. Sch. Bd., 6:09-CV-00013, 2010 WL 3323489 (W.D. Va. Aug. 23, 2010).  However, such discretion normally is exercised in extraordinary circumstances.  Alexander, 190 F.R.D. at 193 (citing circumstances such as when the judgment debtor demonstrates he can effortlessly pay the judgment or when the bond would be a great financial burden).

Azdel has not shown that a stay without bond is needed due to extraordinary circumstances.  Although Azdel did not seek the court's approval for a supersedeas bond, Azdel still has an opportunity to post bond in order to secure a stay of costs pending the appeal.  In order for the payment of costs to be stayed, Azdel must post a bond for the court's approved amount of the Bill of Costs.  The bond must cover the full amount of the court-approved costs in order to ensure maintenance of the status quo and to secure C&D's interest in the costs pending appeal.  The stay will become effective upon Azdel's posting of the bond. Fed. R. Civ. P. 62(d).

4

### III. TAXATION OF COSTS

### A. Standard of Review

A prevailing party may recover costs, other than attorney's fees, under Fed. R. Civ. P. 54(d)(1). The district court does not have "unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case." Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 235 (1964) overruled on other grounds by Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987). Rather, the court may only tax those costs authorized by statute. Constantino v. American S/T Achilles, 580 F.2d 121, 123 (4th Cir. 1978); Fells v. Virginia Dep't. of Transp., 605 F. Supp. 2d 740, 742 - 743 (E.D. Va. 2009). The general taxation of costs statute, 28 U.S.C. § 1920, provides six categories of costs that may be taxed: (1) clerk and marshal fees; (2) transcript fees; (3) printing and witness fees; (4) copying fees; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, interpreters, and special interpretation services. The court has wide latitude to award costs, so long as the costs are enumerated in § 1920. Centennial Broad., LLC v. Burns, Civ. Action No. 6:06-cv-006, 2007 WL 1839736, at *1 (W.D. Va. June 22, 2007). In defining the parameters of this statute, "'it is generally recognized that courts may interpret the meaning of items listed in § 1920.'" Fells v. Virginia Dep't. of Transp., 605 F. Supp. 2d 740, 742 (E.D. Va. 2009) (citing BDT Products, Inc. v. Lexmark Intern., Inc., 405 F.3d 415, 419–20 (6th Cir. 2005)).

The prevailing party bears the initial burden of demonstrating that the requested costs are allowable under § 1920. Mayse v. Mathyas, Civ. Action No. 5:09-cv-100, 2010 WL 3783703, at *1 (W.D. Va. Sept. 38 2010). Rule 54(d)(1) creates a presumption that the prevailing party will be awarded costs. Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999). Once the

prevailing party has so demonstrated, the burden shifts to the losing party to show the impropriety of taxing the proposed costs. Mayse, Civ. Action No. 5:09-cv-100, 2010 WL 3783703, at *1. If departing from this rule, the court must justify its decision by "articulating some good reason for doing so." Oak Hall Cap & Gown Co. v. Old Dominion Freight Line, Inc., 899 F.2d 291, 296 (4th Cir. 1990).

Costs should be limited to those "reasonably necessary at the time" they were incurred. LaVay Corp. v. Dominion Fed. Sav. & Loan Assn., 830 F.2d 522, 528 (4th Cir. 1987). This standard "will obviously involve some subjective judgment by the court," because "[l]awyers will often disagree about what is 'reasonably necessary' to prepare for a trial." Jop v. City of Hampton, Va., 163 F.R.D. 486, 488 (E.D. Va. 1995). Thus, "[t]he court must be guided by its own understanding of the necessities of legal practice, applied to the facts and circumstances of the individual case." Id.

### B. Analysis

C&D seeks costs in the amount of $39,851.42, based on the following cost categories: (1) fees for printed or electronically recorded transcripts–$26,864.99; (2) fees for witnesses–$300.00; and (3) fees for exemplification and copies–$12,786.43. Dkt. No. 260, p. 1. Azdel argues that certain costs should be disallowed, and that the court should reduce the total amount of costs to $22,156.99. Dkt. No. 272, p. 6. Although Azdel does not contest C&D's witness fees, Azdel does contest C&D's requested costs for videotaped transcripts, data conversion, copies, and electronic Bates labeling and image capture. C&D is the prevailing party in this litigation, and thus, enjoys a presumption under Rule 54(d)(1) that it is entitled to recover costs allowable under § 1920. Under this presumption, the Court will assess whether C&D's costs are allowable.

6

**1. Fees for Printed or Electronically Recorded Transcripts Under § 1920(2)**

C&D seeks $26,864.99 for printed or electronically recorded transcripts. Azdel contends that $4,908.00 of these expenses should be disallowed. The primary expense at issue is videographer fees. However, I also review the remainder of C&D's requested costs to determine if C&D has carried its burden of demonstrating that the costs are allowable.

**a. Videographer Fees**

C&D first seeks costs for obtaining video recordings of the depositions of witnesses who could not be subpoenaed and would not voluntarily come to trial. C&D requested videotaped depositions for three necessary witnesses and for an American Airlines interior engineer, all of whom lived out of state, amounting to costs of $4,908. Azdel argues that such costs are not recoverable because they were not necessarily obtained and were only for the convenience of C&D's attorneys.

Videographer fees for depositions are recoverable as costs only if "necessarily obtained for use in the case." Amdocs (Israel) Limited, 2013 WL 1192947, at *3. This "concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial." Cherry v. Champion Intern. Corp., 186 F.3d 442, 449 (4th Cir. 1999). In Cherry, the court recognized that "there surely are circumstances when both a videotape and a transcript of a deposition may be necessary," but ultimately held that a defendant's assertion that a video recording might be needed for effective impeachment at trial was insufficient. 186 F.3d at 449. Uncertainty about whether a witness can attend trial or an opposing party's assurances of a witness's availability can be sufficient to overcome the requesting party's alleged need for videotapes under § 1920. See Mann v. Heckler & Koch Defense, Inc., 2011 WL 1599580, at *6 (E.D. Va. Mar. 4, 2013) (holding videotaped

deposition of officer was not reasonably necessary where Secret Service agreed to produce officer as a witness at trial); Nobel Biocare USA, 2013 WL 819911, at *3 (holding that uncertainty as to whether witnesses would be available for trial does not adequately demonstrate why deposition transcripts would not have been sufficient). Courts consider videotaped depositions as necessary for use at trial when the witnesses are beyond the court's subpoena power and there is no assurance that the witnesses will attend the trial. See Mann, 2011 WL 1599580, at *6.

In this case, C&D argues that they are entitled to videographer fees because all of the witnesses with videotaped depositions were outside the subpoena power of the court, and it was known that the witnesses would be unavailable for trial. C&D also indicates that Azdel chose to videotape all of its depositions; in comparison, C&D ordered the videotapes of the depositions of necessary, unavailable witnesses only when it was necessary to prepare for trial. Moreover, C&D only ordered the depositions of third party witnesses whom both parties intended to have testify at trial. Dkt. No. 273, p. 7. The Court notes that the videotaped depositions were ordered on May 7, 2014 based on C&D's submitted invoices (Dkt. No. 260-2, p. 5), which was less than six weeks prior to the scheduled trial date of June 17, 2014. Dkt. No. 222.

I find that C&D has met its burden to prove that the videotapes of the depositions were necessary for use in this case. C&D's professed reasons for obtaining a video recording of four depositions taken in the case suggest that they were limited to necessity, and not convenience or duplication to assure alternative methods for presenting materials at trial. C&D explained that the witnesses were known to not be available for trial and Azdel had not provided any information to suggest otherwise. See generally Dkt. No. 272, 274. C&D thus has demonstrated a need for the taped depositions in the event of trial. The only issue is whether C&D ordered

8

them close enough to trial to suggest a sufficient need at the time of ordering. Although <u>Cherry</u> does not provide a per se rule that videotaped depositions should be allowed when trial approaches, C&D has shown that counsel waited until less than six weeks before trial to order the depositions. Considering that a four-day trial would require considerable preparation (Dkt. No. 222), it was reasonable for C&D to order the videotaped depositions prior to trial.

Accordingly, I find that C&D has adequately demonstrated why video recordings of the four depositions were necessary for use in the case, and thus, the amount of costs of $4,908.00 should be awarded.

### b. Unchallenged Taxable Fees

Azdel has not challenged the remainder of C&D's requested costs for transcripts under § 1920(2). C&D still must carry the initial burden of demonstrating that the costs are allowable. <u>See</u> <u>Mayse</u>, Civ. Action No. 5:09-cv-100, 2010 WL 3783703, at *1. I have reviewed C&D's invoices and have discovered discrepancies in its calculations for "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." Dkt. No. 260, at 1. Because the costs of the videotaped depositions already have been allowed, only $21,856.99 remains to be reviewed.

C&D provided $18,606.99 in invoices for deposition transcripts, not including the invoices for the videotaped depositions. The Court accepts C&D's invoices for deposition transcripts as proof of taxable costs. Azdel has not contested the transcript costs, and it seems reasonable to tax the cost of depositions due to C&D's use of the depositions in the motion for summary judgment (Dkt. No. 145, p. 2 n.1) and the nearness of trial at the time of the case's conclusion. <u>See Scallet v. Rosenblum</u>, 176 F.R.D. 522, 526 (W.D. Va. 1997) ("The Fourth

9

Circuit has generally favored the allowance of costs for depositions, so long as such costs were 'reasonably necessary.'").

The remaining costs of service fees, travel fees, deposition appearance fees, and postal fees are not taxable under § 1920(2), which only permits "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." See, e.g., id. at 527 (noting that postage fees are typically not taxable). C&D has offered no explanation for why these fees should be taxable under § 1920(2) and has chosen not to characterize these costs under any of the other subsections of § 1920. Dkt. No. 260, p. 1. C&D also has not offered the original invoices to determine the nature of these costs. Dkt. No. 260-3, p. 1-2. The record of costs provided to the Court appears to be internal documentation, with the documents heavily redacted as "confidential" so that any further effort determining their purpose is unavailing because of the lack of supporting documentation explaining the nature of these particular costs. I recommend not awarding any of the costs for deposition appearance fees, service fees, travel fees, or postal fees under § 1920(2), which amounts to $789.29.[1]

The costs of the deposition transcripts, videotaped transcripts, and assorted remaining costs of service fees, travel fees, deposition appearance fees, and postal fees only amounted to $24,304.28. C&D has requested an additional $2,460.71 in transcript fees, but has not provided invoices or any other documentation supporting this cost. I find that C&D has not carried its initial burden of demonstrating that this cost is allowable and recommend not awarding the unaccounted for $2,460.71 in requested costs.

---

[1] I certainly recognize that costs incurred for deposition appearance fees, travel fees for witnesses, and service of witness subpoenaes are the type of costs recoverable under § 1920(3). I have rejected these fees not because C&D lumped them under § 1920(2), but because C&D simply has not provided the detail necessary to carry its burden of showing that these costs are properly taxable.

10

Therefore, I recommend that C&D's expenses under § 1920(2) be reduced by $3,250.00, which amounts to a total award of $23,514.99.

### 2. Fees for Exemplification and Copies Under § 1920(4)

Azdel contests all of C&D's requested costs under § 1920(4). C&D requested $12,786.43 in costs for exemplification and copies in its Bill of Costs. These costs originate from data conversion, internal and external copying, and electronic Bates labeling and image capture.

### a. Data Conversion

C&D seeks to recover costs for converting electronic stored information ("ESI") into a readable format. C&D initially provided electronic documents, mostly consisting of e-mails, in an NSF format organized by search term. Azdel moved for the documents to be produced in a readable, searchable format. Dkt. No. 19, p. 11. As a consequence, this Court found that C&D had violated Federal Rule of Civil Procedure 34 and ordered C&D to pay reasonable costs not to exceed $8,463.00 to convert the ESI discovery production into a readily usable format. Dkt. No. 24, p. 4. Plaintiff arranged for the conversion of the data at a vendor of its choosing and had the data formatted in its preferred manner. C&D paid the invoice generated by Superior Document Services for the data conversion service, and now seeks to recover the amounts it paid as a taxable cost under § 1920(4). Dkt. No. 260-1, p. 6. Citing specifically to the language of the invoice, Azdel argues that C&D's request must be denied because the production was not completed for their convenience and because the electronic data was processed rather than converted.

Section 1920(4) allows for the recovery of "[f]ees for exemplification and the costs of making copies . . . where the copies are necessarily obtained for use in the case." 28 U.S.C.

§ 1920(4).  A prevailing party can recover costs "associated with copying or duplicating its files, but it may not receive reimbursement for any other ESI-related expenses."  Country Vintner of North Carolina, LLC v. E&J Gallo Winery, Inc., 718 F.3d. 249, 253 (4th Cir. 2013).  Courts cannot tax ESI-related expenses because "making copies" under § 1920(4) does not include any processing of ESI beyond converting computer data into a readable format.  Id. at 261; Country Vintner of N. Carolina, LLC v. E. & J. Gallo Winery, Inc., No. 5:09-CV-326-BR, 2012 WL 3202677, at *2 (E.D.N.C. Aug. 3, 2012) aff'd, 718 F.3d 249 (4th Cir. 2013) ("Thus, a prevailing party may recover costs associated with copying or duplicating its files, but it may not receive reimbursement for any other ESI-related expenses.").  In Country Vintner, the leading Fourth Circuit case on this issue, only $218.59 of the $111,047.75 in ESI-related expenses requested were actually awarded in order to solely compensate for the costs of "converting electronic files to non-editable formats, and burning the files onto discs."  718 F.3d at 260–61.  The Fourth Circuit reasoned that such limited recovery is consistent with "the statute's history, its plain language, and the Supreme Court's narrow contemporary interpretation of the costs taxable under § 1920."  Id.; see also Tanguichi v. Kan P. Saipan, Ltd. 132 S. Ct. 1997, 2006 (2012).

The Fourth Circuit in Country Vintner relied upon the Third Circuit's reasoning in Race Tires America, Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158 (3d Cir. 2012).  The Third Circuit in Race Tires concluded that "conversion of native files to the agreed-upon format for production of ESI constitute[s] 'making copies of materials'" and is thus taxable under 28 U.S.C. § 1920.  Id. at 167.  However, Race Tires noted an important limitation to taxing ESI production:

> [s]ection 1920(4) does not state that all steps that lead up to the production of copies of materials are taxable. It does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional. It does not say that activities that encourage cost savings may be

Case 6:12-cv-00023-NKM-RSB   Document 275   Filed 02/18/15   Page 12 of 25   Pageid#: 7011

> taxed. Section 1920(4) authorizes awarding only the cost of
> making copies.

Id. at 169 (footnote omitted). The Third Circuit recognized that "extensive 'processing'" may be

"essential to make a comprehensive and intelligible production" of ESI. Id.; see also Hecker v.

Deere & Co., 556 F.3d 575, 591 (7th Cir. 2009) (allowing a prevailing party to recover "costs for

converting computer data into a readable format in response to [the losing party's] discovery

request"). However, those processing services still do not constitute "making copies" taxable

under § 1920(4). Race Tires, 674 F.3d at 169.

The Fourth Circuit expressly excluded from its holding where the parties have "clearly

agreed to the production of ESI on a particular database or in a native file format" and thus did

not comment on the scope of allowable costs under those circumstances. Country Vintner, 718

F.3d at 261, n.20. See also In re Ricoh Co., Ltd. Patent Litig., 661 F.3d 1361, 1365-1366 (Fed.

Cir. 2011). Relying on Eleventh Circuit precedent, the Federal Circuit addressed taxation of

costs in the context of party agreement, and importantly, when a court order requires payments

for e-discovery.[2] The Federal Circuit concluded that § 1920(4) taxable costs involving the

production of ESI

> are those costs necessary to duplicate an electronic document in as
> faithful and complete a manner as required by rule, *by court order*,
> by agreement of the parties, or otherwise. To the extent that a party
> is obligated to produce (or obligated to accept) electronic
> documents in a particular format or with particular characteristics
> intact (such as metadata, color, motion, or manipulability), the
> costs to make duplicates in such a format or with such
> characteristics preserved are recoverable as "the costs of making
> copies ... necessarily obtained for use in the case.

---

[2] In Country Vintner, the court concluded that the reach of § 1920(4) was limited to those taxable costs incurred to convert "electronic files to non-editable formats, and burning the files onto discs." Id. at 260. The Federal Circuit, relying upon Eleventh Circuit precedent, differs from the Fourth Circuit in that it permits recovery of costs for some preparatory activities such as imaging and metadata extraction. CBT Flint Partners, LLC v. Return Path, Inc., 737 F.3d 1320, 1333 (Fed. Cir. 2013). The Federal Circuit does recognize that if a more cost-effective and simpler data conversion process is available than the one incurred, "only the costs of that simpler process will be chargeable under section 1920(4)." Id. at 1330.

13

CBT Flint Partners, LLC v. Return Path, Inc., 737 F.3d 1320, 1328 (Fed. Cir. 2013) (emphasis added). Although the Federal Circuit's approach differs on one point from Country Vintner in that it permits taxation of the stage-one costs that goes into data conversion, CBT Flint highlights important distinctions in e-discovery production that are applicable to the Fourth Circuit. Id. at 1329. First, data conversion pursuant to a court order is recoverable under § 1920(4). Id. at 1328. Second, data conversion can be recoverable if the process was "not incurred just to make copies for the convenience of the producing party." Id. at 1330. The increasing prevalence of discovery involving electronically stored information requires that the parties address early in litigation how discovery of this information will occur and how the costs of such discovery are to be allocated or shared. Absent such discussions or the existence of a court order shifting the costs, the courts are constrained to award only those costs necessary for an initial production of the documents to the opposing party. Relying on Country Vintner, the Northern District of Illinois examined in detail the parties' responsibilities in managing the distribution and costs of e-discovery:

> As a final observation, this case highlights the importance of parties focusing early in the case on the cost of e-discovery, especially in light of decisions reading § 1920 to exclude certain ediscovery processes from the scope of costs in that section. The parties here agreed to produce ESI in TIFF format and to provide a standard type of "load file," but they did not agree to share the cost or use a particular vendor for processing ESI. On similar facts, the Third Circuit in Race Tires distinguished a situation where the parties agreed to share the costs of creating "a specific document review database by a specific vendor for document production purposes" from the situation in Race Tires, where the parties agreed to produce files in TIFF format but "retained their own electronic discovery consultants." Race Tires, 674 F.3d at 171 n.11 (distinguishing Synopsys, Inc. v. Ricoh Co. (In re Ricoh Co. Patent Litigation), 661 F.3d 1361, 1365 (Fed. Cir. 2011)). Here, there was ample warning that discovery in this lawsuit would be expensive. Even at a very early stage, Life Plans had identified

approximately 170 people with information about the issues in this case and had proposed taking at least 25 depositions. (Disc. Plan and Initial Status Report at 3.)  Although Rule 26(f) does not require parties to address the cost of processing ESI in their discovery plan, the parties are well advised to follow the Sedona Conference's best practices and discuss the burden of producing ESI and the possibility of cost sharing at the "meet and confer" conference.  See Sedona Conference Commentary on Non–Party Production & Rule 45 Subpoenas, 9 Sedona Conf. J. 197, 201 (2008).

Life Plans, Inc. v. Security Life of Denver Insurance Co., ___ F.Supp.2d ___, ___ 2014 WL 2879881, at *7 (N.D. Ill. 2014).  The Northern District ultimately denied recovery of the preparation costs for ESI services based on Country Vintner, emphasizing that the parties retained their own e-discovery consultants.  Id.

Here, C&D argues that its data conversion costs are recoverable under Country Vintner, as well as other persuasive case law.  Although Azdel in principle agrees that data conversion costs are recoverable, it asserts that C&D actually processed electronic data rather than converted it.  See Dkt. No. 260-1, p. 6.  Azdel points to C&D's invoice from Superior Document Services as evidence of processing, which describes the act as "ESI Processing and Loading into Relativity for Native Review" and refers to compressing data and flattening NSF files. Dkt. No. 260-1, p. 6.  Because C&D has not offered any "affidavits or other evidence about what was done to its unusable NSF files to put them into a reasonably usable format as ordered by the Court," Azdel concludes that the Court should not allow C&D to recover these costs. Dkt. No. 274, p. 6.

Azdel ignores the fact that C&D incurred the data conversion charge because of their request that C&D pay the cost of converting the data as part of its motion to compel.  Azdel selected the vendor it wanted to convert the data, directed what format to which it wanted the data converted, and otherwise controlled the process.  Azdel insisted this conversion was

necessary for C&D to comply with its obligations under Rule 34.  I granted the motion to compel and directed that C&D pay the cost of the data conversion.  My order did not change the standard financial burden each party takes on during the course of litigation.  Although I ordered C&D to pay the costs of converting Azdel's ESI discovery production into a "readily usable format," I did not order C&D to pay for data processing and any other processes that Superior Document Services performed.  Azdel represented that its quote for data conversion amounted to $8,463.00; thus I ordered payment up to $8,463.00 for conversion to a readily usable format.  Neither party disagrees that any part of Superior Document Services' performance that solely converted the data into a usable format is recoverable under § 1920(4).  Any processes that Azdel sought on top of the copying processes covered under § 1920(4) should be borne by Azdel under the Fourth Circuit's standard taxation of costs.  Moreover, the court order for payment of services aligns to CBT Flint, which found that costs are recoverable when ordered by the court and were not incurred for the convenience of the producing party.  As C&D only paid for data conversion due to court order and did not personally benefit from the data conversion services, it would be unfair to impose such a large processing fee on the party that succeeded on summary judgment.  Therefore, I find that the court-ordered cost which was incurred at the behest of Azdel, and which was completed under the direction of Azdel, is recoverable under § 1920(4).

### b. Copies

C&D seeks $3,927.82 to recover the costs of internal and external copying.  Azdel argues that C&D has not provided sufficient information to determine the necessity of the copying costs, contending that at least some of the copies were not "necessarily obtained" for determination of the case.  Dkt. No. 274, p. 2-4.  C&D counters that the total amount of internal copying was accurate based on the itemized monthly review of the case, noting that the firm's

bill did not provide any further breakdown of copying costs. Dkt. No. 273, p. 2-3. Although finding the costs reasonable, C&D offers to discount its copying rate from 25 cents per page to 10 cents per page. Dkt. No. 273, p. 4.

The court may tax "costs for copies of exhibits…where such copies were necessarily obtained for use in the case." Bd. of Dirs., Water's Edge v. Anden Grp., 135 F.R.D. 129, 137 (E.D. Va. 1991). Costs for copies of documents provided to the court or opposing counsel are generally recoverable. Ford v. Zalco Realty, Inc., 708 F. Supp. 2d 558, 563 (E.D. Va. 2010), Mann, 2011 WL 1599580, at *6; Centennial Broad, LLC, 2007 WL 1839736, at *2. Copies are not limited to just documents related to dispositive motions or produced documents at trial, but include discovery-related costs as well. Country Vintner, 718 F.3d at 257-58. However, copies made merely for counsel's convenience ordinarily are not allowed. Fells v. Virginia Dept. of Transp. 605 F. Supp. 2d 740, 743 (E.D. Va. 2009); Simmons v. O'Malley, 235 F. Supp. 2d 442, 444 (D. Md. 2002); Thomas v. Treasury Mgmt. Ass'n, Inc., 158 F.R.D. 364, 372 (D. Md. 1994). "The burden is on the party seeking recovery of photocopying costs to demonstrate the reasons for each copying charge." Ford, 708 F. Supp. 2d at 563. This burden requires the party to explain and document the bill of costs. Scallett v. Rosenblum, 176 F.R.D. 522, 525 (W.D. Va. 1997).

It strikes the Court that over four thousand dollars is an unusually large amount of copy charges. Although the parties engaged in extensive discovery, the majority dealt in an electronic format. See Dkt. No. 24, p. 1-2 ("Despite the uncomplicated factual and legal nature of underlying cause of action and defenses asserted, the parties have sought to discover an enormous amount of information which is almost exclusively ESI."); compare Elderberry of Weber City, LLC v. Living Centers-Se., Inc., No. 6:12-CV-00052, 2014 WL 3900389, at *17

(W.D. Va. Aug. 11, 2014) ("Such a substantial figure may well be necessary and reasonable, given the large volume of contested legal issues and extensive discovery performed in this case."), with Kennedy v. Joy Technologies, Inc., 484 F. Supp. 2d 502, 505 (W.D. Va. 2007) ("A review of the record in this case indicates that the copies for which the defendant seeks reimbursement are substantially greater than those documents actually filed by the defendant with the court.  Accordingly, I will sustain the plaintiff's objection to the taxation of these costs.").  The parties did provide significant documentation to the court based on the stipulated protective order entered on January 29, 2013, which required the parties to submit documents containing material designated as confidential to the court under seal.[3]  Dkt. No. 32, p. 9.  In accordance with this court's local rules, when either party requested that the court file documents under seal, that party was required to provide to the court copies of those documents.  W.D. Va. Gen. R. 9.  Further, pursuant to the local rules and as set forth in multiple court orders in this case, C&D was required to submit to the court copies of the documents to be sealed with proposed redactions clearly marked.  In addition to a myriad of motions to seal and redact, Azdel and C&D sparred over a variety of discovery issues, which further increased the number of copies distributed to the court.  Although Azdel correctly noted that the parties e-filed their filings on CM/ECF (Dkt. No. 272, p. 4-5), clearly a large number of copies of sealed filings were exchanged throughout the course of this litigation.

Ultimately, it is difficult for the Court to determine the reasonableness of C&D's copying charges from the Bill of Costs because C&D provided limited billing information.  The table summarizing Silverberg, Goldman & Bikoff, LLP's monthly invoices do not provide the price per copy, the number of copies, the documents copied, or even the number of copies made per

---

[3] The Court previously entered a stipulated protective order on December 27, 2012. Dkt. No. 25, at 6. This order also required the parties to submit confidential documents under seal.

Case 6:12-cv-00023-NKM-RSB   Document 275   Filed 02/18/15   Page 18 of 25   Pageid#: 7017

day. Rather, the invoices simply list the month and a monetary figure, ranging from $1.75 to $620.85 per charge. See e.g., Adkins v. Crown Auto, Inc., 4:04 CV 00042, 2005 WL 2563028, at *5 (W.D. Va. Oct. 11, 2005) (holding that itemized list of copies that included date, the documents copied, the number of copies made per day, and the charge per copy is sufficient documentation to support recovery of copying charges). In response to Azdel's objections about copying costs, C&D explained that originally "the firm charged C&D at its standard copying rate of 25 cents per page. When the large number of copies needed for use in the case became apparent, the firm began discounting its rate for copying to 10 cents per page, and this is the rate charged for the vast majority of the copying." Dkt. No. 273, p. 4. C&D also stated that the copying machine records showed 33,397 pages of copying for the case from the time of the firm's involvement just prior to the Court's granting of summary judgment. Dkt. No. 273, p. 3. C&D suggested that this number of pages was lower than the actual number of total copies for this case because it did not include "copies made on firm copiers and printers that do not record file numbers for tracking purposes. Nor does it include copies made by local counsel, Bevin Alexander's, law firm." Dkt. No. 273, p. 4 at n.1.

Although the information provided by the Bill of Costs was limited, C&D's clarifications about how the copying costs were generated have provided enough information to determine costs. See Adkins, No. 4:04 CV 00042, 2005 WL 2563028, at *5 (citing Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir. 1991) ("Of course, Commercial was not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs. Rather, Commercial was required to provide the best breakdown obtainable from retained records.")). Considering the information C&D has provided the court and the extensive discovery disputes on the docket, a

copying total of 33,397 pages seems reasonable.  See, e.g., Elderberry, No. 6:12-CV-00052, 2014 WL 3900389, at *17.

This Court has ruled, consistent with prior decisions, that copy charges of ten cents per page is reasonable for purposes of taxation of costs under 28 U.S.C. § 1920.  McAirlaids, Inc. v. Kimberly-Clark Corp., Civ. Action No. 7:12-cv-578, 2014 WL 495748, at *12 (W.D. Va. Feb. 6, 2014); see also Kelley v. Little Charlie's Auto Sales, No. 4:04-cv-83, 2006 WL 2456355, at *4 (W.D. Va. 2006); Adkins, No. 4:04-cv-42, 2005 WL 2563028, at *5-6.  C&D did not give the Court a reason to deviate from that finding in this action and ultimately proffered that it was willing to reduce its costs to 10 cents per page.  Dkt. No. 273, p. 4.  I find no reason to deviate from those prior decisions in this case.  Given the Court's prior experience, and applying a copying charge of ten cents per page, I recommend a total internal copying charge of $3,339.70.

In addition to internal copying, C&D's table of copying costs (Dkt. No. 260-1, p. 1) lists an external copying charge of $37.82 from Ricoh in August 2013.[4]  Dkt. No. 260-1, p. 4.  Azdel again argues that C&D has not demonstrated that the costs were necessarily incurred for use in the case.  Dkt. No. 274, p. 4.  C&D counters that the copying work with Ricoh was an isolated print job incurred because Ricoh's copying charge of eight cents was less expensive than their internal copying charge.  Dkt. No. 273, p. 4.

The same standard under § 1920 applies to both internal and external copies, where taxing can only occur for copies "necessarily obtained for use in the case."  Bd. of Dirs., Water's Edge v. Anden Grp., 135 F.R.D. 129, 137 (E.D. Va. 1991).  Ricoh's invoice for the copying project only shows that it provided 446 "prints," and provided no explanation of the prints'

---

[4] C&D listed a total of $8,896.43 in external copying charges. Dkt. No. 260-1, p. 1. This charge includes Superior's external copying charge of $8,463.00 for data conversion, which has already been addressed, and Ricoh's two charges of $123.26 and $272.35 for Bates labeling and electronic image capture, which will be dealt with separately. Dkt. No. 260-1, pp. 2-3, 5-6.

purpose. Although C&D was only required to provide the best cost breakdown attainable, see Adkins, No. 4:04 CV 00042, 2005 WL 2563028, at *5, C&D's lack of explanation for the external copying is unsettling. While C&D generally was able to explain its uses for internal copying, C&D offered no explanation for the purpose of Ricoh's sole external copying job. C&D's "mere submission of a receipt, without any specification as to 'what was copied,' does not warrant taxation." Mann v. Heckler & Koch Def., Inc., 1:08CV611 JCC, 2011 WL 1599580, at *6-7 (E.D. Va. Apr. 28, 2011) (citing Ford v. Zalco Realty, 708 F.Supp.2d 558, 563 (E.D. Va. 2010)). Without evidence or explanation regarding the use of these copies, the Court cannot tax these items. The cost of $37.82 is disallowed.

Therefore, I recommend that C&D's internal and external copying expenses under § 1920(4) be reduced by $588.12, which amounts to a total award of $3,339.70.

### c. Bates Labeling and Electronic Image Capture

Azdel finally challenges C&D's request to tax their electronic Bates labeling and image capture work performed by Ricoh, which tallies to a total of $395.61. Dkt. No. 260-1, p. 2-3, 5. Azdel contends that Bates labeling and electronic image capture are not covered by § 1920 because they do not pertain to photocopying. Dkt. No. 272, p. 5. They further argue that these processes are more closely related to e-discovery production, which is not recoverable, and that C&D offered no explanation for "Image Capture D-Heavy" expenses. Id.; Dkt. No. 274, p. 5. C&D rejects Azdel's argument because (1) Azdel requested the Bates labeling on the documents, and (2) C&D provided the documents on a readable CD instead of a paper copy format. Dkt. No. 273, p. 5.

C&D can recover for the production of discovery documentation onto CDs, which in this case is referred to as "image capture." The Fourth Circuit has held that "subsection (4) limits

21

taxable costs to those identified by the district court: converting electronic files to non-editable formats, and burning the files onto discs." Country Vintner of N. Carolina, LLC v. E. & J. Gallo Winery, Inc., 718 F.3d 249, 260 (4th Cir. 2013). Documents can be produced electronically and still be taxed under § 1920. In re Ricoh Co., Ltd. Patent Litig., 661 F.3d 1361, 1365 (Fed. Cir. 2011) ("Notably, in 2008, Congress amended section 1920(4) by replacing the phrase 'copies of papers' with 'making copies of *any materials*,' Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110–406, § 6, 122 Stat. 4291, 4292 (emphasis added), to reflect the idea that "electronically produced information [is] [re]coverable in court costs.") (citing 154 Cong. Rec. H10270, H10271 (daily ed. Sept. 27, 2008) (statement of Rep. Zoe Lofgren)); BDT Prods., Inc. v. Lexmark Int'l, Inc., 405 F.3d 415, 420 (6th Cir. 2005) ("[E]lectronic scanning and imaging could be interpreted as 'exemplification and copies of papers.'"). Although Ricoh's invoices provide limited information about "image capture," C&D sufficiently explained in its brief that Ricoh's image capture involved "copying to a CD the documents provided to Azdel in response to its discovery requests." Dkt. No. 273, p. 5. Because relaying discovery information on CDs is analogous to copying, Azdel's costs of "image capture" are taxable.

The taxability of Bates labeling is a closer issue. The Fourth Circuit has not had an opportunity to decide whether electronic Bates labeling is a taxable cost under § 1920(4). Mezu v. Morgan State Univ., 775 F. Supp. 2d 801, 807 (D. Md. 2011) ("[T]here is currently no direction within the Fourth Circuit on whether these costs should be included in the 'reasonable' costs associated with copying documents for discovery production."). The circuits have split on whether Bates stamping is a taxable cost. Bisbano v. Strine Printing Co., No. CA 10-358ML, 2013 WL 3246089, at *2 (D.R.I. June 26, 2013) ("The First Circuit has not addressed whether

22

the cost associated with Bates labeling of documents is a recoverable cost under 28 U.S.C. § 1920. Those courts that have addressed this issue are divided."); compare Envirocorp Well Servs., Inc. v. Camp Dresses & McKee, Inc., No. IP99–1575–C–T/G, 2001 WL 1112114, at *3 (S.D. Ind. Aug. 6, 2001) (taxing Bates labeling); Karsian v. Inter–Regional Fin. Group, Inc., 13 F.Supp.2d 1085, 1093 (D. Colo. 1998) (same); with Powell v. The Home Depot, U.S.A., Inc., No. 07-80435-CIV, 2010 WL 4116488, at *16 (S.D. Fla. Sept. 14, 2010) report and recommendation adopted, No. 07-80435-CIV, 2010 WL 4102933 (S.D. Fla. Oct. 18, 2010) (refusing to tax Bates labeling); Baxter Int'l, Inc. v. McGaw, Inc., No. 95–2723, 1998 WL 102668, at *3 (N.D. Ill. Mar. 3, 1998) (same).

Courts within the Fourth Circuit have taxed electronic Bates labeling. The Eastern District of Virginia has held that "although the costs of collecting, storing, and extracting electronically stored information may not be taxable, the costs of converting that information into the agreed-upon format and electronically Bates stamping it are analogous to copying costs, and therefore are taxable." Nobel Biocare USA, LLC v. Technique D'usinage Sinlab, Inc., No. 1:12CV730 LMB/TCB, 2013 WL 819911, at *6-7 (E.D. Va. Mar. 4, 2013), appeal dismissed (Aug. 8, 2013); cf. D& B Countryside, LLC v. Newell, 217 B.R. 72, 80 (Bankr. E.D. Va. 1998) (denying costs for photocopying and Bates stamping documents produced in discovery). The District of Maryland taxes Bates stamping fees as well. Mezu v. Morgan State Univ., 775 F. Supp. 2d 801, 807 (D. Md. 2011). I find these districts' approaches persuasive. Moreover, Azdel requested Bates stamping, which tilts the balance for taxing in favor of the party who fulfilled the request. Alzheimer's Inst. of Am. Inc v. Elan Corp. PLC, No. C-10-00482-EDL, 2013 WL 8744216, at *5 (N.D. Cal. Jan. 31, 2013) ("[S]canning and converting the database

documents into .TIFF format, Bates stamping, OCR, and loadfile generation are taxable costs where the other party requests documents in that format.").

Accordingly, I recommend awarding C&D the full cost of Bates labeling and electronic image capture, totaling to $395.61.

## V. CONCLUSION

For the reasons set forth above, I hereby **RECOMMEND** that C&D's Bill of Costs (Dkt. No. 260) be **GRANTED**, but in the reduced amount of $36,013.30. The calculation of the costs awarded is as follows:

| Cost | C&D Request | Amount Awarded |
|---|---|---|
| Fees for transcripts | $ 26,764.99 | $ 23,514.99 |
|     Deposition Transcripts | $ 18,606.99 | $ 18,606.99 |
|     Video Recording | $ 4,908.00 | $ 4,908.00 |
|     Deposition Appearance | $ 200 | $ 0 |
|     Service | $ 394.75 | $ 0 |
|     Travel | $ 104.52 | $ 0 |
|     Postage | $ 90.02 | $ 0 |
|     Unknown | $ 2,460.71 | $ 0 |
| Fees for exemplification | $ 12,786.43 | $ 12,198.31 |
|     Data Conversion | $ 8,463.00 | $ 8,463.00 |
|     Internal Copies | $ 3,890.00 | $ 3,339.70 |
|     External Copies | $ 37.82 | $ 0.00 |
|     Bates labeling and Electronic Image capture | $ 395.61 | $ 395.61 |
| Witness Fees | $ 300.00 | $ 300.00 |
| **TOTAL** | **$ 39,851.42** | **$ 36,013.30** |

The Court further recommends that payment of the awarded costs be **STAYED** until the resolution of Azdel's pending appeal of this case in the Fourth Circuit. However, the Court

24

recommends that Azdel be **ORDERED** to post a bond for $36,013.30 within fifteen (15) days of the date of the district court's order.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

It is so **ORDERED**.

Enter: February 18, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge